[Civ. No. 10388. First Appellate District, Division Two.—December 22, 1937.]

PAULINE JESSE et al., Respondents, v. E. J. GIGUIERE, Appellant.

Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

Ingemar E. Hoberg for Respondents.

STURTEVANT, J.—From a judgment rendered against him for damages for injuries sustained in an automobile collision the defendant has appealed.

He contends that the judgment is without support in the evidence for the reason that the evidence will not support a finding that any negligence of defendant proximately caused or contributed to plaintiffs' injuries. The accident occurred on the afternoon of the 9th day of June, 1935, in the city of Burlingame. Burlingame Avenue runs east and west. On the north side is a polo field. From the south Channing Road runs north to Burlingame Avenue opposite the polo field. The intersection of those two streets is, within the meaning of the California Vehicle Act, an obstructed highway. Eucalyptus trees of considerable growth stand somewhat close together along both sides of Burlingame Avenue. The curbs of the sidewalks on both the southeast corner and the southwest corner of the intersection are rounded. No marker indicated the center of the intersection and, as we understand the record, no marker indicated the middle line of either Burlingame Avenue or Channing Road. The plain-

tiffs were riding as the guests of their son-in-law Sterling L. Hammack. Mrs. Hammack was also riding in the car. Mr. Hammack was driving a Studebaker sedan and was proceeding from the west toward the east along the right-hand side of Burlingame Avenue. The defendant and his wife were in the defendant's car, an Oldsmobile sedan, and the defendant was proceeding from the south toward the north along Channing Road. The theories of the parties were distinctly different. The defendant contended that he drove north into the intersection, passed to the right of the center of the intersection, and then made a left-hand turn to go west on Burlingame Avenue, and as he was about to leave the intersection the accident happened. The plaintiffs contended that Mr. Hammack was driving along the right-hand side of Burlingame Avenue at a speed of from 15 to 20 miles an hour and that when his car reached the westerly property line on Channing Road the defendant's car cut the southwest corner of the intersection from two to three feet north of the rounded curb, dashed into the right-hand side of the Studebaker, and knocked it 15 to 20 feet toward the north with such violence that it was overturned. The defendant asserts that the impact occurred while his automobile was still within the intersection, that his entry into the intersection was senior in time and he therefore had the right of way, and that the sole proximate cause of the accident was negligence on the part of the driver of the Studebaker. Under his theory of the case that contention would be sound. However, the plaintiffs introduced evidence from which the jury might have inferred that the defendant cut the corner of the intersection in such a manner as to strike the Studebaker under any circumstances. The diagram used at the trial and contained in the transcript, and on which the witnesses called by the plaintiffs marked the course of the Oldsmobile, discloses facts indicating that when the rear end of the Oldsmobile was entering the intersection the front end thereof was leaving the intersection, and that the collision took place west of the intersection and when the Oldsmobile had wholly cleared the intersection and was on its left-hand side of Burlingame Avenue. Moreover, the markings indicate that the Oldsmobile was not at any time on the north side of the middle line of the avenue. The diagram further indicates that before the impact the Studebaker had not reached the intersection

but by the impact it was knocked to a place about one-half within and one-half without the intersection.

There was evidence that the defendant drove down Channing Road in the middle thereof at a speed of from 40 to 50 miles per hour and, without giving any signal of his intention to make a left-hand turn, at a high rate of speed he so swerved around the corner as to make decided marks in the streets for a distance of twenty-five feet back of the place of the impact. There was evidence that the Studebaker car was proceeding at a rate of from 15 to 20 miles per hour and that the driver did not know the defendant's speed nor his intention of making the turn until the two cars were only about 60 feet apart measuring the arc around the southwest corner of the intersection. Giving effect to the foregoing facts, we are unable to say there was no factual support to the implied finding that the acts of the defendant were the proximate cause of the accident.

█ It was one of the claims of the defendant that the impact occurred while he was still in the intersection and that he was the first to enter the intersection and therefore he had the right of way and the sole proximate cause of the collision was the failure of Hammack to yield the right of way. He complains of the trial court's ruling in giving or refusing instructions on that subject. Of its own motion, or on the request of the plaintiffs, the court gave an instruction that the defendant was not, under the facts recited, entitled to the right of way if he ''was traveling at a negligent rate of speed''. It was a proper instruction as our statutes were formerly worded. (*Lindenbaum* v. *Barbour,* 213 Cal. 277, 281 [2 Pac. (2d) 161].) But, prior to June 9, 1935, the date of the accident, the statutes had been amended and the instruction, as given, was not a correct statement of the law. (*Morrow* v. *Mendleson,* 15 Cal. App. (2d) 15, 19 [58 Pac. (2d) 1302].) The plaintiffs say the record does not show that said instruction was not asked by defendant. We think it does. It sets forth a list of all instructions asked by defendant and said instruction is not on the list. Again the plaintiffs assert that the error, if any, was invited by defendant because he asked and the court gave an instruction which substantially stated the same rule in the same language. That assertion must be sustained. The defendant requested and the trial court gave the following instruction:

"If you find that the Oldsmobile driven by Mr. Giguiere entered the intersection of Channing road and Burlingame avenue in advance of the Studebaker, and at a lawful rate of speed, then I instruct you that the Oldsmobile driven by Mr. Giguiere had the right of way, and it is the duty of the driver of the other automobile under such circumstances to yield the right of way to Mr. Giguiere's automobile." (Rep. Tr. 426 and 415.)

The trial court of its own motion, or on request of the plaintiffs, also gave the instruction complained of. It is as follows: "If you find from the evidence that the defendant's automobile entered the intersection first or at the same time as the Studebaker automobile, and you further find that at said time and place the defendant was traveling at a negligent rate of speed, then I instruct you that the defendant was not entitled to the right of way at the intersection." In other words, the instruction as given of the court's own motion was substantially in the language of the instruction given at the request of the defendant. The latter may not complain. (24 Cal. Jur. 870; 3 Am. Jur. 432; 5 C. J. S. 205.)

Defendant claims he asked an instruction, the trial court inserted a modification, and then gave it. He objects to the modification. We have italicized the insertion. As so modified the instruction was as follows: "If you find that Mr. Giguiere in driving the Oldsmobile had the right of way, *and was then and there using ordinary care and caution,* then I instruct you that he had the right to assume, and until he knew the contrary, to act upon the assumption that the driver of the other automobile would yield the right of way to him." The objection has no merit. The defendant is not supported by the record, which shows (Rep. Tr. 428, 429) that defendant made the modification complained of and then the court gave the instruction. Furthermore, under the general law applicable to negligence cases, the instruction seems to be unobjectionable (19 Cal. Jur. 596) and it was applicable in the instant case. (*Crabbe* v. *Rhoades,* 101 Cal. App. 503, 507 [282 Pac. 10].)

The defendant asked and the trial court refused to give an instruction on the subject of imminent peril. That refusal was based on the statement of the trial court "given elsewhere". That statement is supported by the record.

The subject was fully covered by instructions 27 and 28. In the order numbered they are:

27. "In time of imminent danger, a person is not necessarily negligent because he failed to take every precaution or adopt every means of safety that a careful calculation subsequently shows he might have taken or adopted. Where, however, two courses are open to the imperiled party, he should not take voluntarily a chance of obvious danger when a safe course is open and apparent to him.

28. "You are further instructed that this doctrine of imminent peril does not apply to a party who by reason of his own negligence creates the sudden peril which confronts him."

The defendant also asked the trial court to give several specific instructions. The trial court refused to give them and defendant assigns such refusal as error. We think the assignment is without merit. Each was a formula instruction. During the trial the plaintiffs contended that the defendant was, at the time of the accident, driving at an excessive speed; that in making the turn into Burlingame Avenue he did not first give a signal of his intention, neither did he drive around the right-hand side of the center of the intersection; and that in traversing the intersection he did not use due care or any care. The defendant contended that he did not do any of those things; that Hammack drove on his left-hand side of Burlingame Avenue; that he drove at an excessive speed; that after defendant entered the intersection Hammack also entered and did not yield the right of way; that in so entering and when he saw the defendant was turning to his left, Hammack attempted to pass at close range in front of defendant and to drive on the north side of Burlingame Avenue. The instructions fully covered every issue so made. The said refused instructions were restricted to the single claim that Hammack attempted to pass in front of and at close range to defendant's car. They may not properly be said to be addressed to a theory of one of the parties. (*Graham* v. *Consolidated M. T. Co.*, 112 Cal. App. 648, 651 [297 Pac. 617].) They were but an attempt to stress a specific part of the evidence in violation of well-settled rules. (24 Cal. Jur., "Trial", sec. 102; *Stuart* v. *Preston*, 2 Cal. App. (2d) 310, 322 [38 Pac. (2d) 155].) Further-

more, instructions on such specific facts would, under the facts, have been an attempt to fix a standard of care when confronted with an imminent peril. That subject was, as we have shown, fully and completely covered. To have gone further was to create a conflict with the very essence of the doctrine of imminent peril. It is patent when the jury was properly told that when confronted with an imminent peril " . . . a person is not necessarily negligent because he fails to take every precaution or adopt every means of safety that a careful calculation subsequently shows he might have taken or adopted", it would be error to specifically analyze the facts and state to the jury that such acts did or did not constitute negligence.

The defendant requested and the trial court refused to give another instruction: "In considering whether the driver of the automobile in which Mr. and Mrs. Jesse were riding was or was not exceeding the speed limit, you have the right to consider, for such weight as you deem proper to give the evidence, the distance that his car traveled after the accident, and its movements before it came to a stop." In so refusing the trial court did not err. It was another attempt to pick out isolated portions of evidence and instruct thereon. (24 Cal. Jur., "Trial", sec. 102.)

By its verdict the jury awarded Mr. Jesse damages in the sum of $1,000. The defendant makes no objection. It awarded Mrs. Jesse damages in the sum of $9,000, and the defendant contends that sum is excessive. He bases that contention on the claim that the two awards are inconsistent. We think not. It is not claimed their injuries were the same. There was evidence that Mrs. Jesse sustained fractures of all of the transverse processes of the lumbar vertebrae with considerable damage to the tissue and muscles. She was confined in a hospital for one month. At the time of the trial (nine months after the accident) she had recovered to a considerable extent. But she had lost thirty pounds in weight and complained of pains and restricted motion in her back. There was evidence that such injury was permanent, that it would be necessary for her to wear a steel corset and that she could not hereafter do her housework as she had done before the accident. Considering all of these facts we may not, as a matter of law, say that the verdict was excessive.

(*Kimic* v. *San Jose-Los Gatos etc. Ry. Co.,* 156 Cal. 273, 277 [104 Pac. 312].)

The judgment is affirmed.

Spence, Acting P. J., and Ogden, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 21, 1938.