[Civ. No. 11835. Second Appellate District, Division One.—September 29, 1939.]

MYRON H. WELLS, as Trustee, etc., Appellant, v. ELLWOOD LLOYD IV, et al., Defendants; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a Corporation) et al., Respondents.

Thurlow T. Taft and Tanner, Odell & Taft for Appellant.

Freston & Files, Clarence M. Hanson, Ralph E. Lewis, Louis Ferrari and Edmund Nelson for Respondents.

WHITE, J.—This is an appeal by the plaintiff from a judgment of nonsuit in an action prosecuted in the name of the trustee in bankruptcy of the estate of Bay Cities Guaranty Building Loan Association, a corporation, bankrupt, to recover damages alleged to have been suffered by the bankrupt corporation by reason of alleged fraudulent acts of the defendants. The action was brought by the corporation before bankruptcy, the trustee as such having thereafter been substituted as plaintiff. Before the trial involved in this appeal the action was dismissed as to all defendants except Merchants National Trust and Savings Bank of Los Angeles and its successor, Bank of America National Trust and Savings Association.

This is the second appeal in this action. On the first appeal a judgment for plaintiff against the bank was reversed

by the Supreme Court upon the ground that other issues than the amount of damages should have been submitted to the jury for decision. (*Wells* v. *Lloyd IV*, 6 Cal. (2d) 70 [56 Pac. (2d) 517].) We will here forego a detailed statement of the factual background of this litigation, for the reason that a full and comprehensive statement thereof is found in the cited case, commencing at page 77.

Appellant's main contention on this appeal is that by its decision in the former appeal the Supreme Court held that while as a matter of law it was not proper for the court in the first trial to direct a verdict for the plaintiff, there was nevertheless sufficient evidence upon the question of whether the bank participated in the fraud perpetrated on the Bay Cities Guaranty Building Loan Association to require that this issue should be submitted to the jury. If appellant's contention in this regard is correct, and if it be found that the evidence produced on the second trial was substantially the same as was offered at the first trial, then the decision upon the former appeal became the law of the case, and the trial court was without authority to grant a nonsuit upon the second trial, but was obliged, in accordance with the established law of the case, to submit the issues to the jury.

With reference to the participation by respondent bank in any wrongdoing which resulted in damage to appellant, the Supreme Court in the former appeal said:

"With reference to the claim of the bank that there was no evidence of any wrongdoing on its part, we will point out briefly sufficient reasons why we must hold otherwise. The statement in the letter of the bank to the building and loan commissioner to the effect that a certificate of deposit had been issued in favor of the Lloyd Association was false. It was a positive assertion not warranted by the information of the vice-president who signed the letter. It was a suppression of material facts of which the author of the letter had knowledge. The certificate of deposit never left the custody of the bank but was at all times held as security for the Commagere note. Mr. Brown knew, when he wrote the letter, that the bank would never part with the possession of the certificate of deposit or any money thereof until funds were provided from some other source for the payment of the Commagere note. Therefore the statement that the certificate had been issued to the Lloyd Association was true only in a limited

sense and not in the sense in which the statement would be understood, and was understood, by the building and loan commissioner. The representation regarding the certificate of deposit was made by the bank with the intention that it should be sent to the commissioner. Merchants National Bank, therefore, actively participated in the deceit practiced upon the building and loan commissioner as a result of which a permit was issued."

The only additional evidence elicited at the second trial in connection with the alleged deception practiced by the bank on the building and loan commissioner is contained in the testimony of Ellwood Lloyd IV, when he related:

"I was in the commissioner's office in company with Mr. Rishell when this entire plan and all its details were discussed with him. The commissioner commented that the deposited bonds were certified for savings and that that satisfied him. I can't give you the exact date of this discussion with the commissioner about the bonds but it was just a day or two ahead of Thanksgiving."

However, it appears that this discussion with the commissioner of "this entire plan and all its details" occurred some three weeks *after* the commissioner had issued the permit, and could not therefore have influenced him in his action granting the permit, while it was in connection with the issuance or granting of the permit that the Supreme Court decision refers to the allegedly deceptive letter written by the bank.

In the former appeal the Supreme Court, referring to the writing of the letter to the commissioner by the bank, points out that "this fact alone is not necessarily sufficient to fix responsibility on the bank for what transpired later", but that the responsibility of the bank for acts performed subsequent to the issuance of the permit is dependent upon the existence of a conspiracy in which the bank joined. Upon this point the decision on the former appeal reads: "We cannot say that the evidence establishes, to the exclusion of every other reasonable conclusion, that the bank conspired to perpetrate the fraud on Bay Cities, which was ultimately accomplished. That question, we think, should have been submitted to the jury." Further in the decision on the former appeal the Supreme Court proceeds to discuss the question of whether the bank's participation in the early stages of the negotiations leading up to the issuance of the permit to the Lloyd Associa-

tion proximately contributed to the loss sustained by appellant, with reference to which on page 86 the court says:

"The question of proximate cause is one for the jury in every case where there is room for a reasonable difference of opinion.

" 'Thus, where the facts of the particular case are disputable, and are of such character that different minds might reasonably draw different conclusions therefrom, a question of fact is presented properly determinable by a jury. . . . So where the rule of intervening efficient cause is relied on by the defendant, it is ordinarily a question for the jury whether there was such an intervening efficient cause as would prevent the negligent act or omission of the defendant from being the proximate cause of injury. . . . Where it is claimed that the defendant's act was not the proximate cause of injury because the result could not reasonably have been foreseen, it is ordinarily a question for the jury whether the result should reasonably have been foreseen.' (22 R. C. L. 148–150.)

"Where different conclusions may be drawn from the evidence as to whether the act is the proximate cause of injury or damage, the question should be left to the jury. (*Mansfield* v. *Eagle Box & Mfg. Co.*, 136 Cal. 622 [69 Pac. 425]; *Anderson* v. *Seropian*, 147 Cal. 201 [81 Pac. 521]; *Elder* v. *Rose*, 63 Cal. App. 545 [219 Pac. 74]; *Kreitzer* v. *Southern Pac. Co.*, 38 Cal. App. 654 [177 Pac. 477].)

"We are of the opinion that it cannot be said, as a matter of law, that the loss was sustained as a natural and probable consequence of the representation joined in by the bank that Lloyd Association held a valid permit or the representation that it had in the bank one hundred and twenty thousand dollars, at the time the permit was issued. *There was sufficient evidence upon which the jury might have decided either that Bay Cities Association did, or that it did not, part with its property as the direct and proximate result of the representations made solely by and on behalf of the Lloyd Association. These were questions of fact which the jury should have been allowed to decide.*"

The evidence upon the second trial being practically the same as that presented upon the first trial, we are impressed that the ruling of the Supreme Court upon the first appeal, that the questions of proximate cause and the existence or nonexistence of a conspiracy, so far as the liability of the

bank is concerned, were debatable questions upon which reasonable minds might disagree and should have been submitted to the jury, became the law of the case and therefore binding upon the trial court and conclusive of those questions upon appeal. In *Estate of Baird*, 193 Cal. 225, at page 236 [223 Pac. 974], we find the following:

"The evidence may be different, and yet unless it is substantially different in a material respect, the doctrine of the law of the case applies, and it applies notwithstanding the fact that in the previous decision evidence contained in the record is not quoted or cited in the opinion."

See, also, *Young* v. *Southern Pac. Co.*, 189 Cal. 746, 749 [210 Pac. 259]; *United Iron Works* v. *Standard Brass Casting Co.*, 98 Cal. App. 517, 519 [277 Pac. 183]; *Westerfeld* v. *New York Life Ins. Co.*, 157 Cal. 339, 345 [107 Pac. 699]. ·

Nor is the doctrine of the law of the case confined to that portion of the opinion of the appellate court which can be said to be strictly essential to the disposition made of the case. (*People's Lumber Co.* v. *Gillard*, 5 Cal. App. 435, 438 [90 Pac. 556].)

The Supreme Court, in its opinion upon the former appeal having established the law of the case, the trial court was without authority to reconsider these rulings, and should have denied respondents' motion for a nonsuit; and it was error to take the case from the jury.

Respondents contend that the ruling of the Supreme Court on the appeal in the first case was that there was sufficient evidence in favor of defendant bank to preclude a directed verdict for the plaintiff, but that such holding does not mean that there was evidence so favorable to plaintiff that had the action of the trial court been the opposite of what it was, that the case should still be given to the jury. With this contention we cannot agree, because the Supreme Court in the previous opinion in positive and unequivocal language directly states that the questions of proximate cause and the existence or nonexistence of a conspiracy should have been submitted to the jury because the evidence in connection therewith presented debatable questions and left room for a reasonable difference of opinion.

Although the foregoing requires a reversal of the judgment herein, we nevertheless feel that we should, for the guidance of the court upon a retrial, give attention to rulings

made in the last trial which are assigned by appellant as erroneous upon this appeal. During the trial a witness was called who was a vice-president of defendant Merchants National Trust and Savings Bank at the time of the transaction which formed the basis of this action, and which witness as such vice-president wrote the letter to the building and loan commissioner as hereinbefore narrated. When appellant undertook to cross-examine this witness under the provisions of section 2055 of the Code of Civil Procedure the court sustained an objection made on the ground that the witness was no longer an officer of the bank. The ruling of the trial court was erroneous. To us it seems incredible that a corporation could nullify the provisions and purpose of section 2055 of the Code of Civil Procedure by simply terminating or suspending the relationship existing between it and its officer prior to the trial of an action commenced against the corporation. The section was undoubtedly intended to provide for cross-examination of any officer whose official position with the corporation put him in possession of any matters material to the cause on trial. Such a corporate official cannot deprive the adverse party to a lawsuit of the right to invoke the provisions of section 2055 of the Code of Civil Procedure by simply terminating his official connection with the corporation. To hold otherwise would enable a corporation to evade cross-examination under this section by the mere subterfuge of discharging an officer prior to the trial of a cause and then reinstating him at the conclusion of such proceeding. In the instant case the former vice-president called as a witness was the author of the letter addressed to the building and loan commissioner; and he having written such letter as an officer of the defendant bank, the plaintiff was entitled to invoke the provisions of section 2055, Code of Civil Procedure, against the corporate defendant by cross-examining defendant's officer and agent, even though the latter prior to the trial terminated his official connection with such corporation.

The trial court also erred when at the close of the evidence on the part of the plaintiff it made the following ruling:

"The evidence of various witnesses as to conversations outside the hearing or presence of any officer of the Merchants National Bank or the Bank of America was admitted subject to a motion to strike and upon the theory that evidence might be produced by the plaintiff to show that the bank did enter

into some arrangement or conspiracy with the other parties originally named as defendants, due to the difficulty of proving conspiracy and because the court should extend a great deal of leeway for such purpose. There having been no showing that the bank entered into a conspiracy or that it had any agreement with any of the other defendants, of course the acts and declarations of those persons would not be binding on the bank, so the motion to strike all of that testimony is granted.''

In the former appeal the Supreme Court said at page 86:

''There was sufficient evidence upon which the jury might have decided either that Bay Cities Association did, or that it did not, part with its property as the direct and proximate result of the representations made solely by and on behalf of the Lloyd Association. These were questions of fact which the jury should have been allowed to decide.''

The rulings of the Supreme Court in the former appeal that there was evidence upon which the jury might have decided that the conduct of the defendant bank made it a party to an existing conspiracy to perpetrate a fraud on Bay Cities Association and consequently liable for the acts and declarations of its coconspirators, must be taken as binding on the trial court and also on this appeal, as the law of the case. The testimony last above referred to should not have been stricken; but the jury should have been advised by appropriate instructions that if they found upon competent evidence that a conspiracy did exist and that defendant was a party thereto, they were then entitled to consider the acts and declarations of a coconspirator relating to the conspiracy as admissible against all conspirators; but that unless they found that a conspiracy was proved and that the defendant bank was a party thereto, the jury should disregard the testimony in question as hearsay so far as the defendant bank was concerned.

It should be understood that throughout this opinion we have followed the rule applicable to cases wherein the appeal is taken from a judgment following a directed verdict or nonsuit, which rule requires that evidence shall be taken by the appellate tribunal in the most favorable light to the losing party in the court below. We are therefore expressing no opinion as to the weight of the evidence or its truth or falsity.

No other points raised demand our consideration.

For the reasons herein stated, the judgment is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeals on October 24, 1939, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 27, 1939. Edmonds, J., and Houser, J., voted for a hearing.