[No. A061044. First Dist., Div. One. Aug. 12, 1994.]

GEORGE CRESPIN et al., Plaintiffs and Respondents, v.
MOLLY COYE, as Director, etc., et al., Defendants and Appellants.

**COUNSEL**

Daniel E. Lungren, Attorney General, and Charlton G. Holland III, Assistant Attorney General, for Defendants and Appellants.

Susan Drake, Mark Regan, Melinda Bird, Stephen Schear, Carole Raimondi-Pineda, Legal Services of Northern California, Lucy Quacinella, Legal Aid

Society of Alameda County, Stephen Ronfeldt, San Fernando Valley Neighborhood Legal Services, Esther Epstein, Legal Aid Society of Orange County and Nancy Rimsha for Plaintiffs and Respondents.

## OPINION

STEIN, J.—This is an appeal from the entry of a permanent injunction prohibiting the State Department of Health, among others,[1] from requiring applicants for "restricted" Medi-Cal benefits to declare under penalty of perjury whether they are a United States citizen or national; and whether they have "satisfactory immigration status" (see Welf. & Inst. Code,[2] § 14011.2, subd. (d)(3)); and if they respond in the affirmative to any of the foregoing inquiries, to produce a Social Security number.

The Department contends that the trial court erred in granting summary judgment because the disclosure of an applicant's immigration status and Social Security number is required by the recently amended sections 14007.5 and 14011.2.

### FACTS

Respondents[3] filed their original complaint on March 21, 1988. The complaint challenged the process for determining Medi-Cal eligibility for immigrants under the version of section 14007.5 then in effect. (Stats. 1981-1982, First Ex. Sess., ch. 3, § 42, p. 6913.)

Effective September 27, 1988, Senate Bill No. 175 (Stats. 1988, ch. 1441, §§ 2, 3, p. 4919) repealed former section 14007.5 and reenacted a new section 14007.5, which created two categories of Medi-Cal eligibility for aliens: The full-range of Medi-Cal services (hereinafter, full-scope benefits) are available to aliens who are lawfully admitted for permanent residence, or who are permanently residing in the United States under color of law (PRUCOL). (§ 14007.5, subds. (b) and (c).) Aliens who do not have the immigration status described in subdivisions (b) and (c) of section 14007.5 are eligible only for care and services that are necessary for the treatment of an emergency medical condition, and medically necessary pregnancy-related services (hereinafter, restricted benefits). (§ 14007.5, subd. (d).)

---

[1] The named defendants and appellants include Molly Coye, M.D., Director of the State Department of Health Services, several other state officials and Doe defendants. We shall hereafter refer to defendants/appellants as "the Department."

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise noted.

[3] Plaintiffs/respondents include Father George Crespin and an association of nonprofit clinics serving the indigent, hereinafter collectively designated "respondents."

In light of these amendments, respondents filed a first supplemental complaint challenging the Department's procedures for determining eligibility for Medi-Cal benefits pursuant to Senate Bill No. 175. In their supplemental complaint respondents contended that the Department required all applicants, including those seeking restricted benefits, "to state whether they are a citizen or an alien, whether they have been granted amnesty, and whether they have been granted temporary or permanent resident status, their Social Security number, their alien registration number, the date they first entered the United States, and country of birth and citizenship. Respondents alleged that requiring disclosure of this information (1) violated the right to privacy under the California Constitution, and (2) violated sections 10000, 14000, 14000.1, 14005, 14005.4, 14005.7, subdivision (a), and 14017.8 of the Welfare and Institutions Code because the required disclosure [was not required by any provision of the Welfare and Institutions Code, was irrelevant to eligibility, and] would deter eligible aliens from applying for necessary emergency and pregnancy-related services." (*Crespin* v. *Kizer* (1990) 226 Cal.App.3d 498, 519 [276 Cal.Rptr. 571] [*Crespin I*].)

Respondents obtained a preliminary injunction prohibiting the Department from requiring applicants seeking only restricted benefits to disclose their immigration status or Social Security numbers. In *Crespin I* this court held that the trial court had not abused its discretion in issuing the preliminary injunction and affirmed that order. (*Crespin I*, *supra*, 226 Cal.App.3d at pp. 518-520.)

Respondents thereafter filed a motion for summary judgment. They contended that immigration status and Social Security numbers were irrelevant to eligibility for restricted benefits, and disclosure of this information was not required by the version of section 14007.5 enacted by Senate Bill No. 175. They argued that requiring the disclosure of this information deterred eligible aliens from applying for benefits. In support of their construction of section 14007.5, they relied on our opinion in *Crespin I*, which they contended was law of the case.

Shortly after respondents' motion was filed, Senate Bill No. 485 (Stats. 1992, ch. 722, § 67), which amended section 14007.5 and added section 14011.2, became effective. The new section 14007.5, subdivision (e) provides that: "Pursuant to Section [14011.2][4] each county department shall require that each applicant for, or beneficiary of, Medi-Cal, including a child, shall provide his or her social security account number, or numbers, if

---

[4]Section 14007.5, actually, erroneously refers to section 14001.2. No such section exists, and the reference is obviously intended to be to section 14011.2, which was also added by Senate Bill No. 485.

he or she has more than one social security number." Section 14011.2 generally requires that "each applicant for or beneficiary of Medi-Cal . . . shall provide" his or her Social Security number, but that a Social Security number shall not be a condition of eligibility for restricted benefits. Subdivision (d) of section 14011.2 further requires that "every applicant" declare under penalty of perjury that "he or she is, or is not any of the following: [¶] (1) A citizen of the United States. [¶] (2) A national of the United States. [¶] (3) An alien who has satisfactory immigration status."[5]

In light of the changes made by Senate Bill No. 485, the Department filed a motion for judgment on the pleadings, as well as an opposition to the motion for summary judgment. It contended that under the newly amended Welfare and Institutions Code the Department is expressly required to ensure that *every* applicant for Medi-Cal declares whether or not he or she is a United States citizen or national, or an alien with "satisfactory immigration status," and discloses his or her Social Security number if he or she does not declare undocumented status.

The court denied the Department's motion for judgment on the pleadings and granted respondents' motion for summary judgment. The court declared that the Welfare and Institutions Code does not permit the Department to require any disclosure concerning immigration status or Social Security numbers of applicants for restricted benefits, and that such inquiries deterred eligible aliens from applying for benefits. The court issued a permanent injunction, from which the Department appeals.[6]

ANALYSIS

The Department seeks reversal of the judgment insofar as it restrains it from (1) requiring all applicants for Medi-Cal benefits, including those seeking only restricted benefits, to declare under penalty of perjury whether they are a United States citizen or national or an alien with "satisfactory immigration status"; and (2) requiring all applicants, except those who declare status as undocumented aliens, to provide a Social Security number.

The Department contends that the plain language of section 14007.5, subdivision (e) and section 14011.2 requires *all* applicants to make a declaration of citizenship or immigration status and to provide a Social Security

---

[5]The reference to "satisfactory immigration status" in section 14011.2 means evidence of status qualifying the applicant for receipt of full-scope benefits. (See also 42 U.S.C. § 1320b-7(d)(1)(B)(ii)(III) [" 'satisfactory immigration status' means an immigration status which does not make the individual ineligible for benefits"].)

[6]The judgment also provided injunctive relief for respondents on various other issues that the Department does not challenge.

number if they do not declare undocumented status. The declaration of immigration status allows the Department to identify those applicants who are required to provide a Social Security number. Requiring the disclosure of Social Security numbers, in turn, aids the Department in verifying whether an applicant satisfies income eligibility requirements. The Department argues that exempting applicants who seek only restricted benefits from complying with these statutory disclosure requirements increases the risk of fraud, because United States citizens or nationals, or aliens who have "satisfactory immigration status" may obtain benefits to which they are not entitled.[7]

Respondents contend that sections 14007.5 and 14011.2 should be construed as exempting any applicant for restricted benefits from making the declaration set forth in section 14011.2, subdivision (d). In support of this contention, they assert that our holding in *Crespin I* is law of the case and that Senate Bill No. 485 did not effect any substantive changes in the law. They further contend that applicants who seek only restricted benefits may not be asked whether they have a Social Security number, because such inquiry is merely a thinly veiled attempt to determine immigration status. They conclude that disclosure of immigration status and a Social Security number is not required by any provision of the Welfare and Institutions Code, and that the Department must be restrained from making such inquires, because the effect is to deter eligible aliens from applying for benefits because they fear deportation.[8]

The trial court's judgment is based on its implicit determination that, as a matter of law, neither section 14007.5 nor section 14011.2 requires applicants who seek only restricted benefits to disclose their immigration status or Social Security number. The dispositive legal question we must therefore

---

[7]Respondents argue that there is no factual basis for the apparent legislative rationale that these disclosures are necessary to prevent fraud. They also question whether there is a rational basis or a compelling state interest in requiring these disclosures of all applicants. (But see, e.g., *American G.I. Forum* v. *Miller* (1990) 218 Cal.App.3d 859 [267 Cal.Rptr. 371] [collecting information regarding immigration status of arrestees did not violate right to privacy, due process or equal protection]; see also *Mullaney* v. *Woods* (1979) 97 Cal.App.3d 710 [158 Cal.Rptr. 902] [state's interest in integrity of welfare system sufficiently compelling to warrant requiring a Social Security number, even of applicant whose religious beliefs precluded her from obtaining a number].) These issues are not relevant to this appeal, because summary judgment was not based on a constitutional challenge to the relevant statutes.

[8]The alleged deterrent effect of the required disclosures is not based on any actual threat of deportation. The federal system for verifying alien eligibility for federal benefits is known as the Systematic Alien Verification for Entitlement Program, or SAVE. (42 U.S.C. § 1320b-7(d)(1)(A).) It is undisputed that the Immigration and Naturalization Service cannot use information gained through SAVE to deport aliens. Moreover, the privacy of individuals undergoing verification is protected "to the maximum degree possible." (42 U.S.C. § 1320b-7(d)(3)(B).)

resolve is whether the trial court erred in determining, as a matter of law, that sections 14007.5 and 14011.2 neither require nor permit these inquiries.

We shall hold that sections 14007.5, subdivision (e), and section 14011.2 require that *all* applicants for Medi-Cal, including applicants for restricted benefits (1) declare under penalty of perjury whether they are, or are not, a citizen or national of the United States or an alien with satisfactory immigration status; and (2) disclose their Social Security number unless they declare, pursuant to section 14011.2, subdivision (d), that they are neither a citizen nor a national of the United States, nor an alien with "satisfactory immigration status." Accordingly, respondents have failed to establish a necessary element of their statutory challenge, and the judgment must be reversed and remanded. (See Cal. Code Civ. Proc., § 437c.)

## 1. *Crespin I As "Law of the Case"*

Respondents argue that in *Crespin I* we determined that inquiries concerning immigration status and Social Security numbers were not required or permitted by the version of section 14007.5, subdivision (e), of the Welfare and Institutions Code then in effect, and that decision is now the "law of the case." (See *City of L. A.* v. *L. A. Bldg. etc. Council* (1952) 109 Cal. App.2d 81, 87 [240 P.2d 16].) *Crespin I* is not the "law of the case." It did not decide the merits concerning the correct interpretation of the relevant provision of the Welfare and Institutions Code then in effect. Moreover, subsequent amendments to the Welfare and Institutions Code enacted by Senate Bill No. 485 have changed the statutory scheme. Thus the analysis in *Crespin I* of the version of section 14007.5, subdivision (e), then in effect has no relevance to the issue of statutory interpretation raised in this appeal.

In *Crespin I* this court addressed the narrow question whether the trial court abused its discretion by granting a preliminary injunction against requiring applicants for Medi-Cal from responding to a broad range of inquiries concerning immigration status and Social Security numbers as a condition of receiving restricted benefits. (*Crespin I, supra,* 226 Cal.App.3d at p. 518; see also *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].) We held only that respondents had made a strong showing of irreparable harm based on essentially undisputed evidence that substantial numbers of eligible aliens would be deterred from seeking prenatal or emergency care they were entitled to, and that the Department offered comparatively little evidence of irreparable harm. (*Crespin I* at pp. 518-519.) In light of the strong showing of irreparable harm, we further held that appellants made a sufficient showing of likelihood of success on the merits of their contention that the scope of disclosure enjoined by the trial court was not required or permitted by the version of section 14007.5, subdivision (e), then in effect, to warrant interlocutory relief. (226 Cal.App.3d at pp. 518-519.)

"[A]ffirmance of [a] preliminary injunction is not a decision on the merits . . . ." (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 75-76 [196 Cal.Rptr. 715, 672 P.2d 121].) When reviewing an order granting a preliminary injunction, the court may in its discretion reach the merits "of any . . . legal questions if the propriety of the trial court's finding regarding the 'interim harm' factor is undisputed." (See, e.g., *Crespin I, supra,* 226 Cal.App.3d at p. 507.) If the court does so, then of course its ruling on that issue of law may become "law of the case." (See *City of L. A.* v. *L. A. Bldg. etc. Council, supra,* 109 Cal.App.2d at p. 87 [in an appeal of a permanent injunction, court held its ruling on constitutional question in prior appeal of preliminary injunction was "law of the case"].) This court, however, did not purport to reach the merits in *Crespin I* on the issues of disclosure of immigration status.

It is also well established that the doctrine of "law of the case" has no application when the law has changed between the first appellate decision and the second appeal. (*George Arakelian Farms, Inc.* v. *Agricultural Labor Relations Bd.* (1989) 49 Cal.3d 1279, 1291 [265 Cal.Rptr. 162, 783 P.2d 749].) Our determination in *Crespin I* , was based on a substantially different statutory scheme. Subdivision (e) of section 14007.5 at that time provided, "Each county department shall require, as a condition of eligibility for Medi-Cal benefits, a declaration in writing by the individual . . . stating whether or not the individual is a citizen or national of the United States or an alien. In order to be eligible for benefits under subdivision (b) or (c) [full-scope benefits], an individual who declares that he or she is an alien must present alien registration documentation or other proof of satisfactory immigration status . . . ." (*Crespin I, supra,* 226 Cal.App.3d at p. 519-520, fn. 22, italics deleted.) Our conclusion that respondents had a "persuasive" argument that former section 14007.5, subdivision (e) did *not* require the full range of disclosure when an applicant sought only restricted benefits, was based largely on the particular language of former section 14007.5, subdivision (e). We explained that the fact that the requirement concerning a declaration of citizenship or alien status in former subdivision (e) of section 14007.5 was followed by language which concerned only the conditions of eligibility for full-scope benefits, supported the inference that the requirement of such a declaration applied only to applicants for full-scope benefits. (*Crespin I* at p. 521.)[9]

One of the important changes enacted by Senate Bill No. 485 was to separate the requirement of a declaration of citizenship or alien status from

---

[9]Specifically, we stated that "respondents make a persuasive argument that *none* of the provisions of section 14007.5, subdivision (e), apply to applicants for restricted services under section 14007.5, subdivision (d), because the rest of subdivision (e) discusses the verification process an alien *who applies for full-scope benefits* must go through." (*Crespin I, supra,* 226 Cal.App.3d at p. 521, original italics.)

a discussion of eligibility for full-scope benefits. (See § 14007.5, subd. (e), and § 14011.2.) Section 14011.2, subdivision (d) now unequivocally states that "every applicant" shall make a declaration of citizenship or immigration status. It does not link this declaration of status in any way with a discussion of eligibility for full-scope benefits. This reorganization eliminates the plausibility of an interpretation that limits the requirement of a declaration of status to applicants for full-scope benefits.

*2. The Amendments Enacted by Senate Bill No. 485 Require All Applicants to Declare Whether They Are U.S Citizens or Nationals or Aliens With Satisfactory Immigration Status*

We now turn to the question whether the trial court correctly determined that the current provisions of the Welfare and Institutions Code do not permit the Department to require applicants for restricted benefits to declare whether they are United States citizens or nationals, or aliens with "satisfactory immigration status," and to provide a Social Security number unless they claim undocumented status.

The requirement of a declaration of citizenship or immigration status now appears in subdivision (d) of section 14011.2: "*Every applicant* or beneficiary . . . shall declare, under penalty of perjury, that he or she *is, or is not* any of the following: [¶] (1) A citizen of the United States. [¶] (2) A national of the United States. [¶] (3) An alien who has satisfactory immigration status." (Italics added.) We find that the requirement of making a declaration of status set forth in section 14011.2, subdivision (d), unambiguously applies to *every* applicant. When the language of a statute is clear and unambiguous, there is no need to engage in statutory construction. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

With respect to disclosure of Social Security numbers, section 14007.5, subdivision (e) now requires that, pursuant to section 14011.2, "Each county department shall require that *each applicant* for, or beneficiary of, Medi-Cal including a child, shall provide his or her social security account number, or numbers, if he or she has more than one social security number." (Italics added.) Section 14011.2, subdivision (a), reiterates that: "The department shall require that each applicant for or beneficiary of Medi-Cal, . . . shall provide his or her social security account number, or numbers, if he or she has more than one number."

The statutory requirement that each applicant shall provide his or her Social Security number is, however, qualified by subdivision (b), which states that provision of a Social Security number is a "condition of eligibility" only for applicants for *either full-scope or restricted benefits*, who, pursuant to subdivision (d), declare that they are a United States citizen or

national or an alien with satisfactory immigration status.[10] Subdivision (c) in turn provides that a Social Security number is *not* a condition of eligibility for those applicants for restricted benefits who declare that they are neither a citizen nor national of the United States and do not claim to have satisfactory immigration status. Therefore, the Department may not require an applicant who declares undocumented status to provide a Social Security number as a condition of eligibility for restricted benefits.

Respondents argue that section 14011.2, subdivision (c)[11] should be construed as implicitly exempting all applicants for restricted benefits not only from providing a Social Security number, but also from making the declaration of status specified in subdivision (d). Although subdivision (c) is somewhat awkwardly phrased in the negative, we do not think that this is its intended meaning. Subdivision (c) cannot be interpreted in isolation from the other provisions of section 14011.2, which clearly contemplate that all applicants for Medi-Cal will make the declaration required by subdivision (d). (See *People* v. *Woodhead, supra,* 43 Cal.3d at p. 1009 ["A statute must be construed 'in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts.'"].) In particular, subdivision (b) expressly refers to applicants for *full-scope or restricted benefits* who make the declaration of status "as required in subdivision (d) . . ." (§ 14011.2, subd. (b).) Therefore, to construe subdivision (c) as implicitly exempting all applicants for restricted benefits from making the declaration described in subdivision (d) would create a conflict with the express language of subdivision (b). It would also conflict with the unambiguous language of section 14011.2, subdivision (d), which requires "[e]very applicant" to make the declaration of status.

Instead, we construe subdivision (c) as merely stating the converse of subdivision (b). In other words, a Social Security number is not a condition of eligibility for benefits, if the applicant declares that he or she is neither a

---

[10]Section 14011.2, subdivision (b) provides: "The requirement for a social security account number shall be a condition of eligibility only for the applicant who is seeking or the beneficiary who is receiving (1) full-scope medical benefits or (2), pursuant to Section 14007.5, restricted medical benefits (emergency and pregnancy-related services only), and in either case, who declares, as required in subdivision (d) that he or she is a citizen or national of the United Sates, and, if he or she is not a citizen or national of the United States, that he or she has satisfactory immigration status."

[11]Section 14011.2, subdivision (c) states: "The requirement for a social security account number shall not be a condition of eligibility for the applicant who is seeking or the beneficiary who is receiving, pursuant to Section 14007.5, restricted medical benefits (emergency and pregnancy-related services only), and who has not made the declaration, as required in subdivision (d), that he or she is not a citizen or national of the United States, and, if he or she is not a citizen or national of the United States, that he or she does not have satisfactory immigration status."

United States citizen nor national, nor an alien with satisfactory immigration status.[12]

### 3. *Federal Exemption of Aliens Seeking Restricted Benefits From Declaring That They Have Satisfactory Immigration Status*

 Respondents finally contend that we must construe sections 14007.5 and 14011.2 as exempting applicants seeking only restricted benefits from making the declaration required in section 14011.2, subdivision (d), because this construction is the only way to render these sections "consistent with federal law." They argue that because, under federal law, restricted benefits are available to aliens without satisfactory immigration status, that immigration status is irrelevant to eligibility for restricted benefits and that the state therefore may not condition eligibility for benefits on a declaration of status such as that required by section 14011.2, subdivision (d). (See 42 U.S.C. § 1396b(v).)

The amendments enacted by Senate Bill No. 485 do not require an alien to declare satisfactory immigration status as a *condition of eligibility* for restricted benefits. To the contrary, an alien who responds in the negative to the inquiry whether he or she has satisfactory immigration status is, nevertheless, eligible for restricted benefits. Instead, the declaration of status is simply a means of identifying which applicants have, or are qualified to obtain Social Security numbers, so that these applicants can be required to disclose them.

Nothing in the state Medi-Cal statutes disqualifies an alien who does not declare satisfactory immigration status from receiving restricted benefits. To the contrary, section 14007.5, subdivision (i) unequivocally provides that an alien who does not declare satisfactory immigration status shall be provided restricted medical benefits if he or she is "otherwise eligible." Moreover, the Department does not seek to compel an alien who declares undocumented status to provide a social security number. Therefore section 14011.2 does not conflict with the federal law authorizing federal financial participation for payment of benefits for aliens who are not "lawfully admitted for permanent residence or otherwise [PRUCOL]" (42 U.S.C. § 1396b(v)(1)) for treatment of an emergency medical condition.

---

[12]Our construction of these provisions illustrates that, although aliens need not have satisfactory immigration status in order to qualify for restricted benefits, the question whether they have satisfactory immigration status, or are undocumented, *is* relevant to whether they must provide a Social Security number.

Respondents further contend that the fact that, pursuant to 42 United States Code section 1320b-7(f),[13] aliens who are eligible only for restricted benefits are exempt from the federal requirement that they have satisfactory immigration status and provide a Social Security number, *precludes* the Department from asking any applicant who seeks only restricted benefits to respond to inquiries concerning immigration status and Social Security numbers. In our view, the exemption set forth at 42 United States Code section 1320b-7(f) merely states the obvious, that the state is not required, as a condition of receiving federal financial participation, to compel an alien seeking restricted benefits, who does not have satisfactory immigration status, and therefore cannot obtain a Social Security number, to affirmatively declare that he or she *has* satisfactory immigration status or to provide a Social Security number. Nothing in these provisions precludes the state, as a matter of administering its own system of determining eligibility for benefits, from requiring an applicant to affirmatively *deny* that he or she has satisfactory immigration status in order to be excused from providing a Social Security number. Sections 14007.5 and 14011.2 therefore do not conflict with the provisions of 42 United States Code section 1320b-7(f) or § 1396b(v).

## CONCLUSION

The judgment is reversed insofar as it restrains the Department from requiring all applicants for Medi-Cal benefits to make the declaration described in Welfare and Institutions Code section 14011.2, subdivision (d), and from requiring all applicants, except those who declare that they are undocumented aliens, to provide their Social Security numbers. In all other respects the judgment is affirmed.

Each party to bear its own costs.

Newsom, Acting P. J., and Dossee, J., concurring.

Respondents' petition for review by the Supreme Court was denied December 1, 1994. Werdegar, J., did not participate therein. Arabian, J., was of the opinion that the petition should be granted.

---

[13]In *Crespin I* we noted that these federal SAVE provisions did not *compel* the state to require disclosure of immigration status. (*Crespin I, supra,* 226 Cal.App.3d at p. 521.) For reasons we have already explained, our holding in *Crespin I* is not controlling in this case. In any event, we now address the very different question whether the federal provisions *preclude* such inquiry.